UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,    )
                             )
              Plaintiff,     )
                             )
       v.                    )          No. 1:21-cr-00304-JPH-DML
                             )
GENESIS PENN                 )
                             )
              Defendant,     )

**ORDER DENYING MOTION TO SUPPRESS**

Police officers found Genesis Penn slouched behind the wheel of his truck in a Taco Bell drive-through in the middle of the night with a handgun resting on top of the center console.  After getting Mr. Penn out of the truck, the officers found over $42,000 in cash and more than fifty grams of methamphetamine.  Mr. Penn has filed a motion to suppress that evidence. Dkt. [26].  For the reasons below, that motion is **DENIED**.

**I.**
**Facts and Background**

The following facts are taken from the parties' briefs and supporting exhibits.  *See* dkt. 26; dkt. 38; dkt. 42.  As explained below, while Mr. Penn takes issue with the government's characterization of certain facts, the material facts are undisputed.  *See United States v. Juarez*, 454 F.3d 717, 719–20 (7th Cir. 2006) (finding no evidentiary hearing required on motion to suppress unless defendant "provide[s] sufficient information to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion"); *United*

1

*States v. Clark*, 935 F.3d 558, 568 (7th Cir. 2019) ("[T]he burden is on the defendant to support his motion to suppress.").

Shortly after 1:00 a.m. on June 13, 2021, police officers from the Indianapolis Metropolitan Police Department and the Cumberland Police Department were dispatched to a Taco Bell at 9981 East Washington Street, Indianapolis, Indiana, to check on a driver who was reported to be asleep in his vehicle while stopped in the drive-through lane.  Dkt. 26-1 at 2; dkt. 37 at 1-2. When officers arrived, they found a Dodge Ram pickup truck stopped in the drive-through lane with the driver's side window rolled down and music playing.  Dkt. 26-1 at 2.  The driver, later identified as Genesis Penn, was slumped over with his head resting in his hand.  Dkt. 37-2 (Ex. 2 video at 3:45–4:00).

As they approached the truck, the officers saw a handgun on top of the center console next to Mr. Penn.  *See* dkt. 26 at 2; *see* dkt. 2 at 2–3.  One of the officers opened the rear passenger door and removed the gun while other officers opened the driver's door, roused Mr. Penn, ordered him to get out of the truck, and handcuffed him.  *See* dkt. 26 at 2; dkt. 37-2 (Ex. 2 video at 3:50–4:30).  *Id.* at 4:30–5:00; *see* dkt. 26 at 3.  Officers then saw what appeared to be methamphetamine in the truck's center console cupholder area.  *See* dkt. 37 at 2–3; dkt. 2 at 4.

After learning that the handgun recovered from the truck had been reported stolen in Johnson County, Indiana, and that Mr. Penn was a convicted felon, s*ee* dkt. 37 at 3; dkt. 2 at 4, officers arrested Mr. Penn.  During

a search incident to arrest, officers recovered a total of $42,206 from Mr. Penn's pockets and bag, s*ee* dkt. 37 at 3; dkt. 2 at 4; *cf.* dkt. 37-1 (Ex. 1 video at 11:30–11:40), as well as several plastic bags containing a white crystalline substance that was suspected, and later confirmed, to be methamphetamine. Dkt. 37 at 3; dkt. 2 at 4–5; *cf.* dkt. 37-1 (Ex. 1 video at 53:00–53:10, 53:55–56:15).

Mr. Penn is charged with Possession with Intent to Distribute 50 Grams or More of Methamphetamine, Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Unlawful Possession of a Firearm by a Convicted Felon.  Dkt. 28 (superseding indictment).  He has moved to "suppress all evidence seized as a result of the unlawful search and seizure."  Dkt. 26 at 4.

## II.
## Applicable Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To enforce this provision and to deter unlawful police conduct, the Supreme Court created the exclusionary rule, which "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation."  *Davis v. United States*, 564 U.S. 229, 231–32 (2011).  However, the exclusionary rule only applies in instances "where its deterrence benefits outweigh its substantial social costs," *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)), and suppression of evidence is a "last resort" and not a "first impulse," *id.* at

3

238.  "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningful' deterrence, and culpable enough to be 'worth the price paid by the justice system.'"  *Davis*, 563 U.S. at 240 (quoting *Herring v. U.S.*, 555 U.S. 135, 144 (2009)).

### III.
### Discussion

Mr. Penn seeks to suppress the evidence that was seized and requests an evidentiary hearing.  Dkt. 26 at 1, 4.  The government responds that the motion should be denied without a hearing because the uncontested evidence shows that police had reasonable suspicion to detain Mr. Penn.  Dkt. 37 at 4, 12.

### A. Reasonable Suspicion for the Initial Search and Seizure

Mr. Penn challenges only his initial encounter with the officers.  *See* dkt. 26 at 3; dkt. 42 at 2–3 (arguing that "the exact nature of the initial encounter with responding officers is in dispute").  He argues that the seized evidence must be suppressed because (1) "the incriminating character of the gun was not immediately apparent" and (2) the officers went beyond a welfare check "when they entered the Defendant's truck, performed a cursory search, and seized items before ever checking on the Defendant's welfare."  Dkt. 26 at 3. The government responds that based on the totality of the circumstances, the officers had reasonable suspicion that Mr. Penn was operating his truck under the influence of alcohol or drugs, justifying a *Terry* stop.  Dkt. 37 at 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

4

"An investigatory stop complies with the Fourth Amendment if the brief detention is based on reasonable suspicion that the detained individual has committed or is about to commit a crime." *United States v. Ruiz,* 785 F.3d 1134, 1141 (7th Cir. 2015) (citing *Terry,* 392 U.S. at 21–22). The stop must be based on "specific and articulable facts which, taken together with rational inferences from those facts, suggest criminal activity." *Id.* "[C]ourts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *Id.* "Reasonable suspicion requires more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence.'" *United States v. Richmond*, 924 F.3d 404, 411 (7th Cir. 2019).

Here, officers responded to reports of an unresponsive driver stopped in the drive-through lane of a Taco Bell in the middle of the night. After they arrived, their observations matched the facts that had been reported. They also saw that the truck's window was down and heard music playing from inside the truck. Mr. Penn appeared to be asleep, slouched over in the driver's seat with his head in his hand. Mr. Penn remained unresponsive while multiple police cars pulled up and while officers approached the truck and shined their flashlights into the cab. He remained motionless even while officers opened the driver's side door, only stirring after an officer grabbed Mr. Penn's wrist and pulled it toward him. Dkt. 37-2 (Ex. 2 video at 3:48-3:56). Viewing the totality of the circumstances in context—that is, the sum of all the information known to officers at the time of the stop, including Mr. Penn's

behavior—"the aggregate facts support a particularized and objective basis for the officers to suspect that [Mr. Penn] was engaged in criminal activity" so "their suspicions were reasonable within the meaning of the Fourth Amendment." *Richmond*, 924 F.3d at 413.

Mr. Penn does not dispute these core facts but argues that the state probable cause affidavit, criminal complaint, and body cameras "tell a slightly different version of events." Dkt. 42 at 2. Specifically, he argues that "the exact time that Mr. Penn was seized within the meaning of the Fourth Amendment" and "the exact nature of the initial encounter with responding officers" are "in dispute." *Id.* at 2-3. But recordings from the responding officers' body cameras leave little room for interpretation. There were no signs that Mr. Penn was awake or responsive when the officers pulled up in their vehicles. And he remained motionless when the officers approached the truck and observed a handgun resting on top of the console. To the extent Mr. Penn argues that those facts didn't give the officers reasonable suspicion to investigate further, "'[t]he need to resolve ambiguous factual situations— ambiguous because the observed conduct could be either lawful or unlawful— is a core reason the Constitution permits investigative stops." *Richmond*, 924 F.3d at 413 (quoting *United States v. Miranda-Sotolongo*, 827 F.3d 663, 669 (7th Cir. 2016)). So even if pieces of this situation could have innocent explanations, taken together they made it reasonable for officers to detain Mr. Penn while they investigated further. *See United States v. Dickson*, 849 F.3d 686, 690 (7th Cir. 2017).

Mr. Penn argues that the incriminating nature of the firearm was not immediately apparent, so the seizure cannot be justified under the plain view doctrine.  Dkt. 26 at 3 (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)). But here, as explained, the officers had reasonable suspicion of criminal activity, so they were allowed to seize the gun so they could "pursue [their] investigation without fear of violence" regardless of whether the gun was itself evidence of criminal activity.  *Adams v. Williams*, 407 U.S. 143, 146 (1972). *See also United States v. Vaccaro*, 915 F.3d 431, 437 (7th Cir. 2019); *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).  Given the situation that the officers faced, protectively seizing the gun was "a vital tool to serve the immediate interest of the police officer[s] in taking steps to assure" themselves that the gun couldn't "unexpectedly and fatally be used against [them]."  *Richmond*, 924 F.3d at 414.

Next, Mr. Penn correctly observes that the facts here are slightly different from the facts in *United States v. Dickson*, because that case involved an open container of alcohol located in the center console.  849 F.3d 686, 690 (7th Cir. 2017).  But even without an open alcohol container, when "viewed in concert and through the lens of experienced law enforcement officers," the totality of the circumstances provides reasonable suspicion that Mr. Penn was driving while under the influence of alcohol or drugs.  *Ruiz*, 785 F.3d at 1142.

Mr. Penn therefore has not shown facts that can support a Fourth Amendment violation in the initial search and seizure here.[1]

### B. An Evidentiary Hearing is Not Required

Evidentiary hearings on suppression issues "are not required as a matter of course." *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018). Instead, an evidentiary hearing is required "only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *Id.* "To obtain an evidentiary hearing relating to suppression of evidence, the defendant bears the burden of making a prima facie showing of illegality." *Id.* at 353–54. This requires the defendant to "present definite, specific, detailed, and nonconjectural facts that justify relief." *Id.* at 354.

Mr. Penn argues that an evidentiary hearing is required to resolve (1) "the exact time that Mr. Penn was seized," and (2) whether Mr. Penn was slumped over and unresponsive or merely resting with his head in his hand. Dkt. 42 at 2–3. The government contends that Mr. Penn "has not made a sufficient showing of illegality" to require an evidentiary hearing. Dkt. 37 at 12.

As discussed above, there is no material dispute about when officers seized Mr. Penn. Mr. Penn argues that he was seized when he "complied with orders to exit the vehicle" and "was placed in handcuffs," dkt. 42 at 2, and the

---

[1] The Court therefore does not address the government's argument that the inevitable discovery doctrine applies.

government does not dispute that.  Dkt. 37 at 7.[2]  Mr. Penn notes that the
criminal complaint and the government's brief also say that Mr. Penn was
arrested later, after officers learned more information about the gun found in
his truck.  Dkt. 42 at 2.  But a *Terry* stop and a formal arrest are not the same,
*see United States v. Eymann*, 962 F.3d 273, 284–85 (7th Cir. 2020), and here
Mr. Penn challenges only the initial stop without arguing that it was a formal
arrest, *see* dkt. 26 at 3; dkt. 42 at 2–3.  Since that stop was permissible under
*Terry*, there is no factual dispute to resolve at an evidentiary hearing.  *See*
*United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007) (Defendants
must present "a definite disputed factual issue" to be entitled to an evidentiary
hearing.).

Mr. Penn's second argument is that there's a dispute about his
responsiveness when officers approached the truck because the criminal
complaint and the government's response describe him as slouched over and
unresponsive, while the body-camera videos show him "sitting up and resting
his head in his hand."  Dkt. 42 at 3.  The videos, however, confirm that Mr.
Penn was slouched toward the center console with his head resting in his right
hand.  *See* dkt. 37-2 (Ex. 2 video at 3:30–4:00).  Mr. Penn also faults the
officers for not "call[ing] his name or attempt[ing] to wake him up" before
forcing him out of the vehicle, dkt. 42 at 3, but that does not show that he may

---

[2] For this reason and because, as explained above, officers had reasonable suspicion
for the seizure, it's not material whether officers removed Mr. Penn from the vehicle or
whether he voluntarily stepped out.

have been responsive.  Instead, the videos show that he did not respond to nearby flashing police lights, to officers talking as they approached his open truck window, or to officers shining their flashlights into the truck from both the driver's and passenger's sides.  Dkt. 37-1 (Ex. 1 video at 0:15–5:30); dkt. 37-2 (Ex. 2 video at 3:30–4:00).  Mr. Penn therefore has not shown "a definite disputed factual issue" about his responsiveness.  *See McGaughy*, 485 F.3d at 969.[3]

Because Mr. Penn has not identified any material disputed facts, an evidentiary hearing is not required.

## IV.
## Conclusion

Mr. Penn's motion to suppress is **DENIED**.  Dkt. [26].

**SO ORDERED.**

Date: 5/11/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov

---

[3] There is a factual discrepancy about the exact time Mr. Penn was seized—the Government's Response says both 1:03 a.m. and 2 a.m., dkt. 37 at 1, 6—but since it's undisputed that the seizure happened in the early hours of the morning, this is not material to the officers' suspicion. *See McGaughy*, 485 F.3d at 969 ("We have emphasized the necessity of materiality in any factual disputes that are presented to the district court as a predicate for an evidentiary hearing.").

Brittney A. Newland
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
bnewland@voyleslegal.com

James H. Voyles
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
jvoyles@voyleslegal.com